# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN V. CASSIDY<br>    **Plaintiff,**<br>  v.<br>HALYARD HEALTH, INC.<br>    **Defendant.** | CIVIL ACTION NO. 17-5495 |

## MEMORANDUM OPINION

**Rufe, J.**                                        August 30, 2019

   Plaintiff John V. Cassidy worked for Defendant Halyard Health, Inc. as a Territory Manager responsible for sales to healthcare facilities for slightly less than two years before being fired. Plaintiff alleges that the firing was motivated by his age (68 at the time) and his disability (coronary artery disease), and that Halyard discriminated against him for asserting rights to medical leave. Defendant contends that Plaintiff failed to meet sales targets, that he never requested an accommodation for his disability, and that his age was not a factor in the termination. Discovery having concluded, Defendant now moves for summary judgment. For the following reasons, the motion will be granted as to the claims of age discrimination and otherwise denied.

## I.  FACTUAL BACKGROUND[1]

   Plaintiff was hired by Halyard as a Territory Manager on October 1, 2014, when he was 66 years old. Plaintiff reported first to Steven Testa and then, beginning on about September 17,

---

[1] Except where otherwise noted, the facts are drawn from Defendant Halyard's Objections and Response to Plaintiff's Supplemental Statement of Material Facts [Doc. No. 39], as this document gives the clearest sense of which facts are disputed and which are not. Where contested, facts are viewed in the light most favorable to Plaintiff as the non-moving party.

2015, to Eric Christianson. As of January 1, 2016, Plaintiff was assigned to the "Nor'Easter Region" led by Christianson. As a Territory Manager, Plaintiff worked to make sales to healthcare facilities.

In October of 2015, Plaintiff was diagnosed with coronary artery disease ("CAD"). On January 12, 2016, Plaintiff notified Christianson that he had been experiencing chest pains, had been diagnosed with CAD, and had been on medicine that made him feel lethargic.[2] Sometime in the following week or so, Christianson spoke with Portia Taylor in Halyard's Human Resources Department ("HR") about Plaintiff's health and certain performance issues Christianson had noticed. Taylor's notes of the conversation included that the "role is not for [Plaintiff]" and that the position was "not a good fit." Christianson had not previously raised concerns to Human Resources about Plaintiff's performance.

At about the same time, Christianson spoke with Plaintiff about the CAD diagnosis; at one point Plaintiff said that he was concerned that if he did not get checked out at the hospital and rest, he would have a heart attack in his sleep and die. Christianson told Plaintiff that Taylor would call Plaintiff to discuss resources that might be available to him. Taylor spoke with Plaintiff and then sent him an email on February 4, 2016, stating that she understood from their initial telephone conversation that he did not require an accommodation and that if he did need one he should not hesitate to contact her.[3]

Plaintiff also spoke by telephone with Aimee Hoffman, the Area Vice President of the Eastern Zone in early 2016. Plaintiff asserts that he told Hoffman that he would need to attend

---

[2] Joint Statement of Material Facts ("SOMF") [Doc. 32] ¶ 10.

[3] *Id.* ¶ 11.

cardio therapy, and that Hoffman responded that Plaintiff still had "numbers to meet."[4]  As a result of this conversation, Plaintiff did not pursue cardio therapy.[5]

Plaintiff asserts that in February of 2016, another Territory Manager, Al Mugno, told Plaintiff at a national sales meeting that Plaintiff was an old man who should retire.  Plaintiff also asserts that Christianson was nearby when the comment was made and that Plaintiff said to Christianson that the comments "sounded like an HR problem."[6]

On March 27, 2016, Plaintiff was placed on a Performance Improvement Plan ("PIP").  Defendant asserts that it was because he failed to meet his quota for 2015 and was not on track for 2016, and "because he exhibited poor product knowledge, had a handful of late expense policy violations, missed timelines for weekly reports, and was not timely with his email responses."[7]  Contrary to Halyard's PIP Guide, Plaintiff was not involved in creating the action items for the PIP and the PIP was not presented to Plaintiff in a face-to-face meeting.[8]  The PIP established nine action items for Plaintiff to accomplish.  According to Plaintiff, the requirements were onerous and he could not reasonably be expected to fully complete every action.  At the end of the 90-day PIP period, despite Plaintiff's improvement, the decision was made to terminate Plaintiff's employment, and he was fired on July 18, 2016.

---

[4] Plaintiff's wife states that she heard Hoffman make this statement; Defendant denies that it was made. For purposes of summary judgment, the Court assumes Hoffman did make this statement.

[5] Defendant has pointed to evidence that Plaintiff's doctor first suggested Cassidy attend cardio therapy in November 2015 and that Plaintiff initially refused.

[6] Mugno denies making such a statement, and Plaintiff acknowledges that he did not report it to HR.

[7] Def.'s Resp. Pl.'s Suppl. SOMF [Doc. 39] ¶ 90.

[8] *Id.* ¶¶ 70-74.

Other Territory Managers in the region also fell below their quotas during this time, including Brendan McCabe (who was hired partway through 2015 and is 18 years younger than Plaintiff) and Mugno (who is 24 years younger than Plaintiff). These employees also finished 2015 with lower overall sales rankings than Plaintiff. In the 2015 annual reviews completed in March of 2016, McCabe and Mugno received "strong performance" ratings, while Plaintiff was rated as "inconsistent." Mugno was never placed on a PIP, while McCabe was not placed on a PIP until 2017.[9] Several months after Plaintiff was fired, three Territory Managers were hired, all of whom were significantly younger than Plaintiff and had no known disabilities.[10]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it could affect the outcome of the suit, given the applicable substantive law, and a dispute is *genuine* if the evidence presented is such that a reasonable jury could return a verdict for the nonmoving party.[11]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[12] Further, a court may not weigh the evidence or make credibility determinations.[13] Nevertheless, the party opposing summary judgment must support each essential element of the opposition

---

[9] *Id.* ¶¶ 109-10, 117.

[10] *Id.* ¶¶ 164-68.

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[12] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[13] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

with concrete evidence in the record.[14] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[15] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[16] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines there is no genuine dispute as to any material fact, then summary judgment is appropriate.[17]

## III. DISCUSSION

### A. Disability Discrimination

Under the ADA, it is unlawful for an employer to discriminate "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[18] In the absence of direct evidence of discrimination, ADA disability claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*.[19] Under this framework, Plaintiff must first establish a *prima facie* case of disability discrimination by showing that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) he has suffered an

---

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[15] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

[16] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[17] *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[18] 42 U.S.C. § 12112(a).

[19] 411 U.S. 792 (1973).

otherwise adverse employment decision as a result of discrimination."[20] If Plaintiff makes out a *prima* facie case, the burden shifts to Defendant to articulate a non-discriminatory reason for the action, and if it does so, the burden shifts back to Plaintiff to show that the reason was a pretext for discrimination.

For purposes of summary judgment, there is no dispute that Plaintiff was otherwise qualified to perform the essential functions of his job and that he suffered an adverse employment action.[21] Defendant argues that Plaintiff was not disabled within the meaning of the ADA because his CAD did not prevent him from performing the activities of his job or general daily activities. However, Plaintiff has produced evidence that the CAD diagnosis caused him to experience difficulty breathing and chest pain while he was seated.[22] Thus, a reasonable jury could find that CAD substantially impairs one or more of an individual's life activities, including breathing.[23] Plaintiff therefore has made out a *prima facie* case.

For its part, Defendant argues that Plaintiff was terminated because he did not meet his quotas; because he lacked knowledge of the products that he sold; and because he did not submit required paperwork in a timely manner. Defendant has produced substantial evidence of problems with Plaintiff's performance, and asserts that the concerns date back to his training

---

[20] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (internal quotation marks and citation omitted).

[21] To the extent that Halyard argues that Cassidy was not "otherwise qualified" for purposes of the *prima facie* case, that argument is rejected for the reasons discussed in connection with the age discrimination claims.

[22] *See Schneider v. Phila. Gas Works*, 223 F. Supp. 3d 308, 316–17 (E.D. Pa. 2016) ("CAD substantially impairs one or more of Plaintiff's life activities, including the normal functioning of Plaintiff's cardiovascular system.").

[23] 42 U.S.C. § 12102(2)(A); *see* 29 C.F.R. § 1630.2(j)(1)(i) ("The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard.")

period. The evidence produced is sufficient to show a non-discriminatory basis for the decision to fire Plaintiff.

Shifting back to Plaintiff, Cassidy has produced evidence of pretext, including the fact that Defendant did not take any action with regard to the asserted performance deficiencies until soon after Plaintiff disclosed his disability. Also potentially significant – and contested – is whether the PIP was a reasonable effort to guide Plaintiff in improving his performance or whether it was so onerous that he did not have a reasonable chance of succeeding.[24] Plaintiff has produced evidence that the PIP required him to exceed his quota for three consecutive months, but that not a single territory in the Nor'Easter Region was able to meet that goal. Halyard argues that the targets were reached in other territories, and the poor performance of the Nor'Easter Region led to Christianson being placed on a PIP in 2018.[25] Defendant also argues that Plaintiff had additional faults with his performance beyond the sales quotas that other employees did not. However, Plaintiff has produced evidence that all of these issues were addressed: the 60-day update to Plaintiff's PIP showed that he had completed a training program, that he had timely completed weekly reports, that he had improved in responding promptly to work issues, and that he had reviewed the expense policy.[26] Plaintiff also has produced evidence that his termination was decided upon by Christianson, Hoffman, and Veronica Robinson of HR, but that Christianson did not provide the other two decision-makers

---

[24] *See Aptaker v. Bucks Cty. Intermediate*, No. 14-2255, 2015 WL 5179183, at *12 (E.D. Pa. Sept. 3, 2015) (denying summary judgment because "[t]he evidence shows a logical connection between the time Plaintiff notified her supervisors of her depression, and the aggressive, almost unattainable Corrective Action Plan, which ultimately resulted in her termination").

[25] Def.'s Resp. Pl.'s Suppl. SOMF [Doc. 39] ¶¶ 132-36.

[26] *Id.* ¶¶ 137-43.

with Plaintiff's performance for the second quarter of 2016 (which he completed at 95.4% of quota), and provided inaccurate information for the first quarter, so that Plaintiff's performance looked significantly worse than it was.[27] A reasonable factfinder could determine, therefore, that Plaintiff's termination was based not on his performance, but because of his disability.[28]

### B. FMLA Claims

The FMLA "entitles eligible employees to take up to 12 work weeks of unpaid leave annually for any of several reasons, including the onset of a 'serious health condition' in an employee's spouse, child, or parent."[29] Under the statute, an employer cannot interfere with an employee's use of FMLA leave, and cannot retaliate or discriminate against an employee for requesting or taking leave.[30] "[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee."[31]

Although the briefing is not entirely clear, it appears from the Complaint that Plaintiff asserts both a retaliation claim and an interference claim, and alleged so in the Complaint.[32] For

---

[27] *Id.* ¶¶ 151-159.

[28] For the same reasons, Plaintiff's disability discrimination claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") may proceed. Plaintiff has stipulated to the dismissal of his failure-to-accommodate claim under the ADA, the NYSHRL, and the NYCHRL. Pl.'s Opp. Mem. [Doc. No. 37] at 1 n.1.

[29] *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724 (2003) (citing 29 U.S.C. § 2612(a)(1)(C)).

[30] *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2615(a)(1), (2)).

[31] *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

[32] Compl. [Doc. No. 1] ¶¶ 55-56. The claims are similar but have some differences. "To succeed on an FMLA retaliation claim, Plaintiff must show that '(1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights.'" *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)) (brackets omitted). Because FMLA retaliation claims "require proof of the employer's retaliatory intent," the *McDonnell Douglas* framework applies. *Lichtenstein*, 691 F.3d at 302. To establish an interference claim, Plaintiff must be an eligible employee who gave notice of his intention to take leave

purposes of summary judgment, the only disputed issue is whether Plaintiff invoked his right to FMLA leave, as required for both retaliation and interference claims. Halyard contends that Cassidy never notified it that he intended to take FMLA-qualifying leave. Plaintiff asserts that he told Hoffman of his diagnosis and that he needed to take cardio therapy, and that Hoffman told him that he "still had numbers to meet." Thus, Plaintiff argues that Hoffman both understood that he needed to take leave for cardio therapy, which would be a "qualifying reason" under the FMLA,[33] and implicitly directed him not to take such leave.[34] "How the employee's notice is reasonably interpreted is generally a question of fact, not law."[35]

Under the relevant regulations, "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave."[36] However, an employee may provide notice "before knowing the exact dates or duration of the leave [he] will take" and "may inform his employer of his need for leave *before* scheduling the treatment so as to reasonably accommodate the needs of the employer."[37] It is for the fact-finder to determine whether Hoffman knew that

---

and was denied benefits to which he was entitled by an employer subject to the FMLA's requirements. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (citations omitted). An interference claim does not require proof of discriminatory intent, and therefore is not subject to the *McDonnell Douglas* analysis. *Id.* (citation omitted).

[33] 29 C.F.R. § 825.301(b).

[34] Pl.'s SOMF [Doc. 37-3] at ¶¶ 53-58.

[35] *Lichtenstein*, 691 F.3d at 303 (footnote and citations omitted).

[36] 29 C.F.R. § 825.302(c).

[37] *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007).

Plaintiff had been diagnosed with CAD and that he was requesting leave for medical treatment of his condition, on a schedule to be worked out between them.[38]

### C. Age Discrimination

The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, terms, conditions, or privileges of employment because of their age.[39] Plaintiff must show that his age "actually motivated" and "had a determinative influence on" the decision to fire him.[40] In other words, he "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."[41] "The plaintiff always retains the burden of persuasion in an age discrimination case, and must show that the adverse employment action would not have occurred *but for* the employer's consideration of age."[42]

Claims under the ADA also follow the *McDonnell Douglas* framework.[43] To establish a *prima facie* case of age discrimination, Plaintiff must show that he is at least 40 years old, is qualified for the position, that he suffered an adverse employment decision and, and that he was

---

[38] The Third Circuit "interpret[s] the requirement that an employee 'take' FMLA leave to connote invocation of FMLA rights, not actual commencement of leave." *Erdman*, 582 F.3d at 509/

[39] 29 U.S.C. § 623(a)(1).

[40] *Ptasznik v. Univ. of Pa.*, 523 F. App'x 156, 159 (3d Cir.2013) (internal quotation marks and citation omitted).

[41] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009) (citation omitted).

[42] *DiFrancesco v. A-G Adm'rs, Inc.*, No. 13-4284, 2014 WL 4379114, at *3 (E.D. Pa. Sept. 4, 2014), *aff'd*, 625 F. App'x 95 (3d Cir. 2015) (citation omitted).

[43] *Id.* (citation omitted).

ultimately replaced by an employee who was sufficiently younger to give rise to an inference of age discrimination.[44]

There is no dispute that Plaintiff is more than 40 years old and that he suffered an adverse employment action when Halyard fired him. Defendant argues that Plaintiff cannot establish the second element, arguing that he was not qualified for his position because he missed his sales quota for four consecutive quarters in 2015 and was behind his annual quota for the first half of 2016, that he did not learn his job duties, and that he failed to perform adequately. However, it is "[o]bjective job qualifications" that "should be considered in evaluating a plaintiff's *prima facie* case."[45] In other words, Plaintiff at this stage is not required to prove that he performed his job well; Plaintiff is unqualified for this purpose only if he lacked the "absolute minimum requirement of qualification, best characterized in those circumstances that require a license or a similar prerequisite in order to perform the job."[46]

Defendant also argues that Plaintiff cannot satisfy the fourth element of the *prima facie* case because his replacement was 45 years old and had more than 20 years of experience in medical sales. The replacement need not be younger than 40, as long as the person is

---

[44] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). The final element of the *prima facie* case also may be shown through facts that "are more likely than not based on the consideration of impermissible factors." *Id.* (internal quotation marks and citation omitted).

[45] *Proctor v. ARMDS Inc.*, 342 F. App'x 848, 850 (3d Cir. 2009) (quoting *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 320 (3d Cir.2000)) (internal quotation marks omitted).

[46] *Makky v. Chertoff*, 541 F.3d 205, 216 (3d Cir. 2008); *see Sweeney v. Roche Diagnostics Corp.*, No. 11-1691, 2013 WL 6731049, at *6–8 (M.D. Pa. Dec. 19, 2013) (discussing Third Circuit case law). Defendant argues that Plaintiff failed to meet objective sales and quota numbers during his employment. However, Defendant also concedes that other Territory Managers failed to meet the quotas and were not fired, arguing that these employees did not have other failings such as lack of knowledge of Halyard's products. It is exactly the need to delve into the details of Plaintiff's performance that makes Defendant's position ill-suited to resolution as part of the *prima facie* case. *See Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 938–39 (3d Cir. 1997) ("Determining whether [the plaintiff] satisfied his employer's expectations is, by its very nature, a subjective assessment.").

"sufficiently younger" than the plaintiff.[47] A 20-year age gap is sufficient to permit an inference of discrimination for purposes of the *prima facie* case, and the Court turns to Defendant's explanation for the adverse employment action.

As discussed above, Defendant has produced evidence sufficient to show a non-discriminatory basis for the decision to fire Plaintiff; thus leaving the question of whether Plaintiff has met his burden of producing sufficient evidence from which a reasonable jury could conclude not just that age may have motivated the employer's action, but that age had a "determinative influence" on the decision.[48] Plaintiff has not done so.

The evidence simply does not support a finding of age discrimination. A stray comment by a co-worker, such as that attributed by Plaintiff to Mugno, is not sufficient evidence of discriminatory intent, even if Christianson was present when the comment was made.[49] Although Plaintiff argues that McCabe was not put on a PIP until 2017 when he was hired only a few months after Plaintiff, Defendant explains that because Plaintiff was hired late in 2014, his first full year of employment was 2015, and he was placed on a PIP in 2016. Similarly, because McCabe was hired early in 2015, his first full year of employment was 2016, and he was placed on a PIP in 2017.[50] Although there is a temporal relationship between Plaintiff's disclosure of his disability and the adverse actions, there is none with regard to age. Plaintiff was already 66

---

[47] *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 699 (3d Cir. 1995) (citations omitted).

[48] *Gross*, 557 U.S. at 176 (citation omitted).

[49] *Palmer v. Britton Indus., Inc.*, 662 F. App'x 147, 152 (3d Cir. 2016); *Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 592 (E.D. Pa. 2013) (citation omitted).

[50] Def.'s Resp. Pl.'s Suppl. SOMF [Doc. 39] ¶ 117.

years old when he was hired in 2014, less than two years before he was fired.[51] Plaintiff argues that Christensen's goal was to "rebuild" his territory with younger employees, but there is no evidence that this rebuilding was predicated on youth, and the employees in 2015 and 2016 ranged in age from 29 to 60.[52] Unlike his claims of disability discrimination and violation of the FMLA, Cassidy has not met his burden of producing evidence to demonstrate that Defendant would not have fired him but for his age.[53] Summary judgment will be granted as to the age discrimination claims.[54]

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion will be granted as to claims of age discrimination. Plaintiff has stipulated to the dismissal of failure-to-accommodate claims, which also will be dismissed. In all other respects, the motion will be denied. An appropriate order will be entered.

---

[51] *Id.* ¶¶ 1, 2, 163. *Cf. Joyce v. Taylor Health & Rehab. Ctr. LLC*, 609 F. App'x 104, 106 (3d Cir. 2015) (holding that the plaintiff had not identified evidence of age discrimination where "no supervisor ever mentioned anything about her age, the company relied heavily on older employees, and at the time of her termination there were ten other employees older than her in the same position").

[52] Pl.'s Ex. U [Doc. No. 37-5]. *See Snik v. Verizon Wireless*, 160 F. App'x 191, 194 (3d Cir. 2005) ("The incoming business sales manager would be expected to 'rebuild' a team of representatives and ensure its success in achieving sales quotas. . . . [The terms 'aggressive' and 'dynamic'] do not, in this context, imply age animus.")

[53] *See DeCicco v. Mid-Atl. Healthcare, LLC*, 275 F. Supp. 3d 546, 562 (E.D. Pa. 2017) (holding that because age discrimination and FMLA retaliation claims "require proof of different elements and inferences[] [i]t is therefore possible that, when examined in the appropriate context, a Plaintiff can meet his burden of establishing pretext for one claim but not another.").

[54] The claims under the NYSHRL are analyzed under the same standards as the ADEA claims. *Szewczyk v. Saakian*, 774 F. App'x 37, 38 (2d Cir. 2019). Claims under the NYCHRL are analyzed separately, and Plaintiff only needs to show that he was treated "less well [] because of a discriminatory intent." *Id.* (internal quotation marks and citation omitted). Even under this standard, however, Plaintiff has not shown a "causal link" between age bias and Plaintiff's firing. *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015) (citation omitted). Under Plaintiff's version of the facts, no complaints were raised about his performance until he disclosed his disability; there is no evidence that age was a factor.